FILED

00 FEB 22 AM 9:32

CLERK U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE, FLORIDA

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

**United States of America**
*ex rel* **Morris E. Kelley,**

Plaintiff,

vs.

**Omni Healthcare, P.A.,** ***directly and as successor by merger with*** **Melbourne Medical Laboratory, P.A.** and **Craig Deligdish,**

Defendants.

**Civil Action - Law**

**Case No.:** 3:00-CV-190-J-20C

**TO BE FILED *IN CAMERA* UNDER SEAL**

## COMPLAINT

The Plaintiff, **United States of America** ***ex rel*** **Morris Kelley,** through its undersigned attorneys, sues the Defendants, **Omni Healthcare, P.A. (directly and as successor by merger with** ***Melbourne Medical Laboratory, P.A.***) and **Craig Deligdish**, and alleges:

1. The Relator, **Morris Kelley,** is a citizen of the United States and resides in the State of Florida within the jurisdiction of this Court.

2. The Defendant, **Omni Healthcare, P.A. ("Omni"),** is a Florida Professional Association which has its principal place of business and which conducts business within the Middle District of Florida. Upon information and belief, **Omni** was incorporated in January 1994.

3. **Omni** is the successor by merger to **Melbourne Medical Laboratory, P.A. ("MML"). MML** was incorporated in April 1991 under the name of "Melbourne Medical Laboratory, Inc."; on or about June 10, 1997, Melbourne Medical Laboratory, Inc. changed its name

to "Melbourne Medical Laboratory, P.A."; then, on or about June 13, 1997, **MML** merged with **Omni.** At all times material hereto, **MML**'s principal place of business prior to its merger with **Omni** was located within the Middle District of Florida.

4. The Defendant, **Craig Deligdish ("Deligdish")**, is a resident of the State of Florida; his residence is within the Middle District of Florida and he conducts business within the Middle District of Florida. Upon information and belief, **Deligdish** has been a shareholder and officer and/or director of **Omni** from its incorporation and was a shareholder and officer and/or director of **MML** from its incorporation until its merger with **Omni.**

5. This is a *Qui Tam* action brought pursuant to 31 U.S.C. 3729 *et seq.* Plaintiff seeks to recover damages on behalf of the United States against the Defendants named above.

6. This Court has jurisdiction pursuant to 28 U.S.C. 1331 & 31 U.S.C. 3729 et seq. (the "False Claims Act"), which bestows exclusive jurisdiction for actions brought under the act upon the federal district courts.

7. Venue is proper in this Court, pursuant to 31 U.S.C. 3732(a), because the acts complained of occurred in the Brevard County, Florida, which is located within the jurisdiction of this Court.

8. Per the False Claims Act:

a. this Complaint is to be filed *in camera* and placed under seal for sixty (60) days and is not to be served upon the Defendant(s) until this Court so orders.

b. The United States Attorney for the Middle District of Florida may choose to intervene within sixty (60) days of receipt of both this Complaint and any material evidence and information according to law.

**Count I**
**Violation of Stark (Self-Referral)**

9. The Relator realleges paragraphs 1 through 8 as set forth herein.

10. Prior to the **Omni / MML** merger, **Omni** held itself out to the public as a group medical practice and **MML** held itself out to the public as a medical reference laboratory. Upon information and belief, **Deligdish** had a financial relationship and was an officer/director of both entities prior to their merger, and has a financial relationship and is an officer/director of **Omni** today.

11. Prior to the **Omni/MML** merger, and in violation of 42 U.S.C. §1395nn, **Deligdish,** upon information and belief:

a. either required or encouraged Physicians associated with **Omni** to refer patients to **MML** for the performance of clinical laboratory services.

b. caused **MML** to submit claims for payment to and obtained payment from individuals, third party payors and/or other entities for designated health services provided pursuant to referrals prohibited by 42 U.S.C. §1395nn (a)(1)(A).

12. Prior to the **Omni/MML** merger, and in violation of 42 USC §1395nn, **Omni** physicians referred patitents to **MML** for the performance of clinical laboratory services.

13. Prior to the **Omni/MML** merger, and in violation of 42 USC §1395nn, **MML** submitted claims for payment and obtained payment from individuals, third party payors and/or other entities for designated health services provided pursuant to referrals prohibited by 42 U.S.C. §1395nn (a)(1)(A).

14. Upon information and belief, since the **Omni/MML** merger, **Omni** has continued to solicit clinical laboratory services business from physicians not affiliated with **Omni** while at the same time requiring **Omni** physicians to refer patients to what had been **MML**, in violation of 42 U.S.C. §1395nn.

14. Per 42 U.S.C. §1395nn:

a. Collection of payment for services provided in violation of said section is prohibited;

b. Any person or entity which collects payment for services provided in violation of said section from an individual must refund said payments;

c. Person(s) who cause claims to be presented for services provided in violation of said section are liable for a civil money penalty of not more than $15,000 for each service provided in violation of said section.

d. Physicians and entities which enter into arrangements which they know or should know are established to assure referrals in violation of this section are subject to civil money penalties of not more than $100,000 per arrangement.

15. The **United States** has suffered the loss of and the loss of use of all funds paid by the **United States** to **MML** for services billed in violation of 42 U.S.C. §1395nn(a)(1)(B). In addition, the **United States** is entitled to recover from **Omni** and **Deligdish** civil penalties pursuant to 42 U.S.C. §1395nn for their violations of the same.

**Count II**
**Medicare Fraud**

16. The Relator realleges paragraphs 1 through 8 as set forth herein.

17. **Omni** and **Deligdish** have committed medicare fraud, as the term is defined by law, in the following particulars:

**A. Alteration of Diagnosis Codes:**

1. Defendants have altered/omitted diagnosis codes in order to obtain payment for services which would otherwise not be compensable or which would be compensable at lower rates, examples of which are as follows:

a. **Walter Ketter**

1) On or about July 13, 1999, Walter Ketter was referred to "Melbourne Medical Lab", i.e., **Omni**, for the performance of certain medical tests.

2) The diagnosis codes submitted to **Omni** with Mr. Ketter's Test Order were as follows:

607.84 443.9 440.9 250.00 401.9

3) Upon information and belief, **Omni** omitted the diagnosis codes on Mr. Ketter's test order in filing its claim for payment of medicare benefits.

b. **Jerry Sehler**

1) On or about July 15, 1999, Jerry Sehler was referred to "Melbourne Medical Lab", i.e., **Omni**, for the performance of certain medical tests.

2) The diagnosis codes submitted to **Omni** with Mr. Sehler's Test Order were as follows:

V67.51 244.9 780.7 401.0

3) Upon information and belief, **Omni** reported the diagnosis code for Mr. Sehler's test order in filing its claim for payment of medicare benefits as

"v72.6".

c. **Anthony Morris**

1) On or about July 2, 1999, Anthony Morris was referred to "Melbourne Medical Lab", i.e., **Omni**, for the performance of certain medical tests.

2) The diagnosis codes submitted to **Omni** with Mr. Morris's Test Order were as follows:

272.0 607.84

3) Upon information and belief, **Omni** reported the diagnosis code for Mr. Morris's test order in filing its claim for payment of medicare benefits as "401.0".

d. **Johnnie L. Reid**

1) On or about July 3 1999, Johnnie L. Reid was referred to "Melbourne Medical Lab", i.e., **Omni**, for the performance of certain medical tests.

2) The diagnosis codes submitted to **Omni** with Mr. Reid's Test Order were as follows:

250 607.84 401.9 250.03

3) Upon information and belief, **Omni** reported the diagnosis code for Mr. Reid's test order in filing its claim for payment of medicare benefits as "401.0".

e. **John A. Bayes**

1) On or about July 14, 1999, John A. Bayes was referred to "Melbourne Medical Lab", i.e., **Omni**, for the performance of certain medical tests.

2) The diagnosis codes submitted to **Omni** with Mr. Bayes's Test Order were as follows:

| | | | | |
|---|---|---|---|---|
| 401.9 | 443.94 | 752.8 | 607.84 | 607.89 |

3) Upon information and belief, **Omni** reported Mr. Bayes's test order contained no diagnosis claims.

**B. Unlawful solicitation of patients:** **Omni**, with the knowledge and assent and, upon information and belief, at the direction of **Deligdish**, has offered to waive co-payments due from patients as a means of soliciting and obtaining new patients.

**C. Unlawful solicitation of physicians:** **Omni**, with the knowledge and assent and, upon information and belief, at the direction of **Deligdish**, has solicited physician referrals to its medical laboratory. The Relator is aware of the following facts in support of this conclusion:

1) **Deligdish**, when told by the Relator that doctors 'had their hand out' seeking 'compensation' for referring laboratory work, told the Relator to "put something in it."

2) **Omni** has been 'putting something in' the hands of physicians by providing laboratory services at prices which, in numerous instances, are below the cost to **Omni** to perform the same.

**D. Unbundling and Upcoding:** Given the nature and extent of the violations Relator has been able to identify with the limited information available to him, and given his knowledge of current Medicare billing practices, Relator expects an examination of the records of **Omni** will establish **Omni** has unbundled and upcoded charges to increase the amount paid to **Omni** by Medicare.

**Wherefore** the Relator requests entry of an Order permitting an appropriate audit of the

financial affairs of Defendants herein; and entry of a Judgment which (a) awards damages in favor of the United States for the actual damages suffered by the United States as established by said financial audit, assesses such statutory penalties against the Defendants as is required by law, and awards the United States as additional damages such amounts as are permitted by statutory multipliers ; (b) awards the Relator the maximum amount permitted by law as Qui Tam Plaintiff; (c) awards the Plaintiff reasonable attorneys fees and costs; and (d) grants such other relief as the Court deems proper and appropriate under the law.

**Amari & Theriac, P.A.**

**By:**______________________________

**Bradly Roger Bettin, Sr.**
Florida Bar Number 369403
Post Office Box 1807
Cocoa, Florida 32923-1807
(407) 639-1320

Attorneys for Relator,
**Morris E. Kelley**